IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **YANG SHAO,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | |
| **CUSTOMERS BANCORP, INC., et al.,** | **NO. 25-2640-KSM** |
| Defendants. | |

**MEMORANDUM**

**Marston, J.**                                                                                           **March 5, 2026**

Litigation in any court—and particularly federal court—is a search for truth; it is not a

forum to relitigate prior actions nor should it be used as an opportunity to partake in a Festivus

"Airing of Grievances."[1, 2]  Here, pro se Plaintiff Yang Shao brings this action against

Defendants Customers Bancorp, Inc., Customers Bank, Jay Sidhu, Sam Sidhu, Karl Danielian,

and Rosemary Dente (collectively, "Customers");[3] notary public Tamara Thompson; three

properties located in Scottsdale, Arizona; various companies located in or conducting business

in Arizona; and the individuals involved or invested in those companies.[4]  (Doc. No. 27 at 16–

---

[1] *Seinfeld: The Strike* (NBC television broadcast Dec. 18, 1997).  As depicted, the "Airing of Grievances" involves telling other Festivus participants about all the disappointments one has experienced in the past year.

[2] As of the date of this Memorandum, and prior to any initial hearing or discovery in this action, Plaintiff has made **37** filings on the docket, which have included **596** exhibits, **508** of which appear to be duplicative.

[3] Defendants Sidhu, Sidhu, Danielian, and Dente are executives at Customers Bancorp, Inc. and Customers Bank.  (*See* Doc. No. 32-1 at 16–17.)

[4] The companies include: USS Team Investments III LLC; Endeavor 1 LLC, Endeavor AL LLC, Endeavor US LLC; Adagio House II LLC, Adagio House III LLC, and Adagio House I & II PLC; and

20.)  Plaintiff alleges various violations of federal, state, and common law, all stemming from a $3.052 million 2018 Small Business Association ("SBA") loan (hereinafter, the "Loan").  (*Id.* at 15–16, 24–25.)

Presently before the Court are two motions, one by Customers and one by Plaintiff. *First*, Customers have filed a motion to dismiss Plaintiff's Consolidated Amended Complaint ("CAC") on the grounds that the CAC is barred by the doctrine of collateral estoppel.[5]  (Doc. No. 41.)  As part of this motion Customers also seek an order barring any future filings by Shao against them.  (*Id.* at 40–41.)  Customers have also filed three supplements to their motion, which update the Court on other proceedings currently taking place between Shao and Defendant Customers Bank in the Superior Court of Arizona, Maricopa County (the "Arizona Action").  (*See* Doc. Nos. 45–46, 54.)  Shao opposes Customers' motion and each of their supplements.  (*See* Doc. Nos. 43–44, 47–53, 55.)  *Second*, Shao has filed a motion for appointment of counsel, which Customers has opposed.  (Doc. Nos. 30, 42.)  Because the Court finds that the CAC is barred by the doctrine of collateral estoppel and grants Customers' motion to dismiss, we deny Shao's motion for appointment of counsel.

---

Axcent LLC.  (Doc. No. 32-1 at 17–19.)  The persons include: Kyle Scott, Maxime Scott, Richard Murray, and Tod Decker.  (*Id.* at 19–20.)

[5] Customers have also moved to dismiss on other grounds, namely the *Colorado River* doctrine and failure to state a claim upon which relief can be granted, and, in the alternative, sought a stay of these proceedings.  (*See generally* Doc. No. 41-3 at 24–40.)  Because the Court grants Customers' motion on collateral estoppel grounds, we do not reach those additional arguments.

## I.    Background[6]

### A.    The Loan

In November 2018, Customers issued the Loan to Defendants Endeavor 1 LLC and Endeavor AL LLC.  (Doc. No. 32-3.)  "Endeavor 1 LLC and Endeavor AL LLC were Plaintiff's Arizona limited liability companies."  (Doc. No. 32-1 at 18.)  And the purpose of the Loan was to cover "ongoing working capital needs, purchase of real estate, goodwill as well as purchase of guaranty fees, costs and expenses related to" the Loan and in support of the businesses' operations.  (Doc. No. 32-4 at 3.)  On November 5, 2018, the Loan was executed by Defendant Axcent LLC, through its Operating Manager, Defendant Kyle Scott, on behalf of Endeavor 1 LLC and Endeavor AL LLC.  (Doc. No. 32-3 at 18–19.)  The Loan was guaranteed by various LLCs and corporations, including Oceanus, Inc. and Endeavor Development, LLC.  (*Id.* at 19–22.)  Plaintiff Yang Shao's name is written in the signature line on behalf of Oceanus Inc. and Endeavor Development, LLC, as the President and Member, respectively, and is also written in the signature line on her behalf, individually, on the same page.  (*Id.* at 22.)  Shao's guaranty was secured by a Deed of Trust on land in Lancaster, California and a mortgage on a house in Naperville, Illinois.  (Doc. Nos. 32-5, 32-6.)

Shao alleges that the Loan was "obtained through the submission of fabricated supporting documents, the Defendant exploited the Plaintiff—a non-English-speaking new

---

[6] These facts are taken from the CAC; documents attached therein; and matters of public record, including state court dockets.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *M & M Stone Co. v. Commonwealth*, 388 Fed. App'x 156, 162 (3d Cir. 2010).  In deciding a motion to dismiss, the Court may take judicial notice of public records, which include filings in state courts like the Superior Court of Arizona.  *Orabi v. Att'y Gen. of the United States*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another [c]ourt's docket."); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006).  To the extent documents from the Arizona Action, or any other docket, were filed as exhibits to the CAC, Customers' motion to dismiss, Customers' supplements, or Shao's responses, the Court adopts the pagination in the CM/ECF system.

immigrant with mental illness." (Doc. No. 32-1 at 3.) Specifically, she alleges that Defendant Kyle Scott "copied, cut, and pasted Plaintiff Yang Shao's signatures from [a] prior . . . agreement." (*Id.* at 18.)

### B.     The Loan Action

On May 12, 2022, Defendants Scott, Murray, and Axcent LLC filed suit in the Superior Court of Maricopa County, Arizona against Shao, Endeavor 1 LLC, and Endeavor AL LLC (the "Loan Action"). *Scott v. Shao*, Superior Court of Maricopa County, Case No. CV2022-006024 (the "Loan Action"). On December 5, 2022, Scott, Murray, and Axcent LLC filed an amended complaint which detailed allegations relating to the Loan and the assisted living businesses the Loan was supposed to be used to support. (Doc. No. 41-6.) On January 3, 2023, Shao, Endeavor 1 LLC, and Endeavor AL LLC, filed an Answer which states that "[p]laintiffs [in the Loan Action] and Yang [Shao] are all personal guarantors on the" Loan. (Doc. No. 41-6 at ¶ 23; Doc. No. 41-7 at ¶ 4.)

### C.     The Arizona Action

On January 17, 2023, Defendant Customers Bank initiated the Arizona Action, alleging uncured defaults and breach of contract under the Loan by its borrowers and guarantors, including Shao. *Customers Bank v. Endeavor I, LLC*, Superior Court of Maricopa County, Case No. CV2023-000859; (Doc. No. 41-8). On March 9, 2023, Shao filed an answer which alleged the same type of forgery and invalid Loan allegations brought in the instant action. (Doc. No. 41-9.)

Then, on May 19, 2023, Shao filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. *In re Yang Shao*, No. 23br06630 (N.D. Ill. 2023). This stayed the Arizona Action and the Loan Action. On July 20, 2023, the Honorable Janet S. Baer

4

held a hearing on Customers Bank's motion to lift the automatic bankruptcy stay and/or dismiss the case. (Doc. No. 41-12.) At that hearing, Defendant Thompson, the notary who notarized Shao's signatures on the Loan documents, testified that she saw Shao sign and she did in fact notarize the documents. (*Id.* at 138–75.) After Defendant Thompson's testimony, Shao voluntarily dismissed her bankruptcy case.[7] (*Id.* at 206.)

On July 30, 2024, Customers Bank filed a motion for summary judgment in the Arizona Action. *Customers Bank v. Endeavor I, LLC*, Superior Court of Maricopa County, Case No. CV2023-000859. That motion was granted in part and denied in part because Shao presented sworn testimony that she did not sign the documents guaranteeing the Loan. (*See* Doc. No. 41-27.) But the court in the Arizona Action did find that there was no material dispute on the issue of whether the Loan was validly procured. (*See id.*)

The matter was scheduled for trial in the spring and summer of 2025, but both were continued due to Shao's actions. (*See* Doc. No. 45.) After Shao failed to appear for trial in August of 2025, on September 4, 2025, Customers Bank moved for sanctions, including an entry of judgment. (*Id.*) On October 1, 2025, the court in the Arizona Action granted Customers Bank's motion for sanctions, struck Shao's answer, directed Customers Bank to proceed by default, and awarded Customers Bank reasonable attorneys' fees. (*See* Doc. No. 46-1.) The court explained that it issued those sanctions because Shao filed "a grossly excessive number of motions" that "unreasonably expanded and delayed the[ ] proceedings"; Shao "used the

---

[7] This began what the Court can only conclude was a purposeful strategy by Shao to use the bankruptcy automatic stay provision, 11 U.S.C. § 362, to delay the Arizona Action. As summarized just a few weeks ago by the U.S. Court of Appeals for the Seventh Circuit, Shao proceeded to file at least **seven** other bankruptcy cases in the Central District of California, the Northern District of Illinois, the District of Arizona, and the District of Rhode Island over the next year. *Shao v. Customers Bank*, No. 25-1558, 2026 WL 457244, at *1 (7th Cir. Feb. 18, 2026). Each bankruptcy case was dismissed, with the Northern District of Illinois finding its case was "part of a scheme to delay, hinder, or defraud" Customers Bank. *Id.* The Seventh Circuit, similarly, dismissed Shao's appeal of that decision. *Id.* at *3.

5

automatic bankruptcy stay as a weapon in this litigation"; "she knowingly and intentionally delayed the first trial [in that action]"; and she "knowingly and intentionally delayed the second trial by filing a frivolous bankruptcy petition knowing the bankruptcy court would reject the petition, but also knowing the petition would delay the trial." (*Id.* at 6–8.) On November 20, 2025, the Court in the Arizona Action entered default judgment against Shao and ordered her to pay more than $350,000 relating to the default of the Loan. (Doc. No. 54 at 14.) The Court also found Shao was a vexatious litigant under Arizona law due to the prior discussed conduct and her filing 34 documents in less than a month and a half after default was issued, which "reflect[ed] a continuation of Ms. Shao's abuse of the litigation process." (*Id.* at 9–11.)

### D.    *The Instant Action*

On May 22, 2025, Shao filed her initial complaint in this Court. (Doc. No. 1.) After Customers moved to dismiss on July 14, 2025, Shao amended her complaint. (Doc. Nos. 11, 13.) In the subsequent weeks, Shao then filed hundreds of "exhibits" in support of her amended complaint and in opposition to Customers' motion to dismiss. (*See* Doc. Nos. 15–20, 21–23.) Shao then sought, and was granted, leave to file the operative CAC. (*See* Doc. Nos. 32–36.)

Here, Shao brings a myriad of claims; including fraud; civil conspiracy; unjust enrichment; violation of federal lending and notarial laws; violations of the Third, Fifth, and Fourteenth Amendments to the United States Constitution; violations of the Pennsylvania Constitution; and common law conversion. (Doc. No. 32-1 at 10–15.) All of these claims stem from the Loan and the documents signed in support of it. (*Id.* at 3–5.)

Customers have filed the instant motion to dismiss the CAC, arguing primarily that it is barred by collateral estoppel. (Doc. No. 41.) Customers have also filed three supplements to their motion to dismiss. (Doc. Nos. 45, 46, 54.) Shao has responded opposing Customers'

motion, and each supplement.  (Doc. Nos. Nos. 43–44, 47–53, 55.)  Shao has also filed a motion for appointment of counsel, which Customers has opposed.  (Doc. Nos. 30, 42.)  Customers' and Shao's motions are thus ripe for resolution.

## II.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quotation marks omitted).  In reviewing a motion to dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations.  *Id.*  However, the court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  And "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck*, 452 F.3d at 260.

## III.    Discussion

Customers seek dismissal of Shao's claims with prejudice under the doctrine of collateral estoppel.  Specifically, they argue that court decisions in the Arizona Action speak directly to— and go against—the underlying factual allegations in the instant action, and therefore, Shao's claims are barred.  (Doc. No. 41-3 at 21–24.)  Customers first made this argument when trial on

the issue of whether Shao signed the Loan documents was still pending in the Arizona Action, but as of the date of this Memorandum, judgment has now been entered against Shao on all claims in that action. (*See* Doc. No. 54.) Shao opposes Customers' collateral estoppel argument on the grounds that the Arizona Action never addressed the "core issues of this case: Fraudulent inducement, document forgery, RICO, and constitutional torts." (Doc. No. 43 at 5.)

The Court agrees with Customers that collateral estoppel bars Shao's claims and requires their dismissal with prejudice. And because the Court dismisses Shao's claims, we need not reach Shao's motion for appointment of counsel. As for Customers' request that Shao be barred from bringing further actions in the Eastern District of Pennsylvania, the Court does not find that Shao will be completely barred from filing suit against Customers in this Court, though the Court issues a stern warning that such a bar is looming. The Court addresses each of the above in turn.

### A. *Collateral Estoppel Bars Plaintiff's Claims*

Collateral estoppel, or issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quotation marks omitted); *see also Nationwide Mut. Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009). By precluding parties from re-arguing matters that they have already "had a full and fair opportunity to litigate," the doctrine "protect[s] against 'the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Sturgell*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)); *see also Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999).

"State court decisions are given 'the same preclusive effect in federal court [that] they would be given in the courts of the rendering state.'" *In re Motion to Confirm Arb. Award*, 823 F. App'x 113, 115 (3d Cir. 2020) (quoting *Del. River Port Auth. v. Fraternal Order of Police, Penn-Jersey Lodge 30*, 290 F.3d 567, 573 (3d Cir. 2002)); *see also Magoni-Detwiler v. Pennsylvania*, 502 F. Supp. 2d 468, 474 (E.D. Pa. 2007) ("Under the Full Faith and Credit Act, federal courts must 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" (citation omitted)). Here, we look to Arizona law, because the Arizona Action was adjudicated in Arizona state court.

Under Arizona law, collateral estoppel "binds a party to a decision on an issue litigated in a previous lawsuit if the following factors are satisfied: (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties." *Campbell v. SZL Props., Ltd.*, 62 P.3d 966, 968 (Ariz. Ct. App. 2003). "If the first four elements of collateral estoppel are present, Arizona permits defensive, but not offensive use of the doctrine." *Id.*

Each of the factors discussed above is applicable to Shao's Complaint; so, it must be dismissed. In the Arizona Action, Shao defended against Customers Bank's breach of contract and default action by alleging all of the same underlying factual claims she asserts here. She claimed forgery; she claimed fraud; she claimed misrepresentations; she claimed conspiracy to fabricate Loan documents. (*See* Doc Nos. 41-9, 41-25, 41-26.) Each of these were arguments made to defend against the claim that she had defaulted on the Loan and breached the Loan contracts, and each of those are the same arguments made in the instant suit. (*Compare* Doc

9

Nos. 41-9, 41-25, 41-26, *with* Doc. No. 32-1.)  Shao had numerous opportunities—across multiple years—and through multiple courts during her various bankruptcy filings, to make these arguments and strong motive to avoid the hundreds of thousands of dollars of damages she owed to Customers Bank.  (*See generally* Doc. Nos. 32, 41); *see also Shao*, 2026 WL 457244, at *1.  Shao's arguments to the contrary are unavailing.  She argues merely that because the *claims* at issue were not litigated in the Arizona Action, her case should be allowed to move forward.  (*See* Doc. No. 43 at 5.)  But this misunderstands the collateral estoppel bar.  It is not whether the exact claims at issue were brought in the prior proceeding, but whether the issues themselves were litigated to a final judgment.  *See Special Fund Div., Indus. Comm'n v. Tabor*, 32 P.3d 14, 17 (Ariz. Ct. App. 2001) (finding that "[a]lthough the ultimate claims differed," a claim for reimbursement could be considered barred by collateral estoppel due to a prior claim for disability regarding the same leg impairment).

It is immaterial that the Arizona Action ended in a default judgment, not a judgment after a trial.  "A default judgment has the same res judicata effect as a judgment on the merits *where the issues were litigated*."  *A. Miner Contracting, Inc. v. Toho-Tolani Cnty. Imp. Dist.*, 311 P.3d 1062, 1070 (Ariz. Ct. App. 2013) (citing *Norriega v. Machado,* 878 P.2d 1386, 1391 (Ariz. App. Ct. 1994)) (emphasis added).  As discussed above, all of the issues at play here were actively litigated in the Arizona Action prior to the default judgment.  (*See generally* Doc. Nos. 32, 41, 45, 46, 54.)  The Arizona Action court had previously found summary judgment for Customers Bank on the issue of whether there was a validly executed Loan.  (*See* Doc. No. 41-27.)  It could not have done so without addressing Shao's arguments about invalidity, conspiracy, and fraud, which make up the core issues in this action.  That decision by the Arizona Action court is a valid judgment on the merits, dealing with the essential issues of this case, with a commonality

of parties.  While Shao has repackaged her claims under new federal, constitutional, and Pennsylvania Commonwealth names, they relate to the same issues on which she already lost.

And, even if the Court were to credit Shao's argument that the main issue here is solely whether or not she signed the Loan documents (Doc. No. 43 at 2), the Arizona Action default judgment would still bar her claims.  This case is not a scenario where a plaintiff secured a default judgment on an issue purely due to a defendant not responding to a lawsuit; here, the default judgment was a sanction.  (*See* Doc. No. 46-1; Doc. No. 54.)  The default judgment was due entirely to her own conduct, namely, being a vexatious litigant, filing numerous frivolous bankruptcy and other filings to delay the Arizona Action, and failing to show up for a trial in which the jury had been impaneled.  (*See* Doc. No. 46-1; Doc. No. 54.)  So, the Court will not allow her to use her default judgment as a shield to re-litigate the same issues brought in the Arizona Action.  Thus, the Court will dismiss Shao's claims under the doctrine of collateral estoppel.[8]

### B.        *Shao's Motion for Appointment of Counsel is Denied*

Because Shao's CAC is barred by collateral estoppel, the Court need not rule on her motion for appointment of counsel. (Doc. No. 30).  There is no statutory right to counsel, and courts have discretion to appoint counsel.  *See Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993);

---

[8] And, even if collateral estoppel did not apply to this action, it appears judicial estoppel would also bar Shao's claims and arguments.  Judicial estoppel is an equitable doctrine that "bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001).  "[I]t is only appropriate when there were (a) irreconcilably inconsistent positions, (b) adopted in bad faith, and (c) a showing that estoppel addresses the harm and no lesser sanction is sufficient. . . . Courts may protect themselves by raising judicial estoppel *sua sponte* even after a litigant has forfeited that argument." *Wirtgen Am., Inc. v. Caterpillar, Inc.*, 746 F. Supp. 3d 218, 224 (D. Del. 2024).  Here, Shao claims that the underlying Loan documents were fraudulently obtained (Doc. No. 32-1 at 3), and yet she admitted in the Loan Action that she was a guarantor on the Loan.  *See supra* Section I.B.  It cannot be both; and the Court can only conclude this change in position was to *again* attempt to avoid the consequences of Shao's decision to guarantee the Loan.

28 U.S.C. 1915(e)(1).  The Third Circuit has recognized a two-step process for courts to use when analyzing requests for appointment of counsel.  First, the Court must consider whether the plaintiff's claims have any merit.  *See, e.g.*, *DiGenova v. Unite Here Local 274*, 673 F. App'x 258, 261 (3d Cir. 2016) (affirming district court's denial of the plaintiff's request for appointment of counsel "because none of [the plaintiff's] filings suggest that he has any potentially meritorious claim").  Only once the court has determined the claims have some merit must it turn to the second step and weigh the factors bearing on the need for appointed counsel.  *See Tabron*, 6 F.3d at 153.  Because the Court has already found that Shao's claims are barred by collateral estoppel and must be dismissed, we deny her motion for appointment of counsel.

### C.    Customers' Request to Bar Shao from Future Filings is One Step Too Far

The Court will not yet bar Shao from any future filings in this Court against Customers, but this order does act as a stern warning to Shao about her conduct.  A district court may enjoin "abusive, groundless, and vexatious litigation."  *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993) (citing 28 U.S.C. § 1651(a)); *see also Wright v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 18cv8311, 2019 WL 5587262, at *8 (D.N.J. Oct. 30, 2019) ("Courts in the Third Circuit have 'made clear that a pattern of groundless and vexatious litigation will justify an order prohibiting further filings without permission of the court.'" (quoting *Chipps v. U.S. Dist. Ct. for the Middle Dist. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989)).  But the Court "should not restrict a litigant from filing claims absent exigent circumstances," and it "must give notice to the litigant to show cause why the proposed injunctive relief should not issue."  *Brow*, 994 F.2d at 1038.  It is an "extreme remedy."  *In re Oliver*, 682 F.2d 443, 446 (3d Cir. 1982).

Here, Customers seek to bar Shao from filing any lawsuit against them in the Eastern District of Pennsylvania without first obtaining leave of Court.  They point to Shao's numerous

12

and frivolous bankruptcy filings and various complaints and motions in state and district courts across the country, forcing Customers to repeatedly defend a single eight-year-old loan. (Doc. No. 41-3 at 10–19, 40–41.) The Court also notes that Shao has been found to be a vexatious litigant in both Arizona State Court and the Northern District of Illinois Bankruptcy Court. (Doc. No. 54); *Shao*, 2026 WL 457244, at *1–2. And over less than a year of litigation in the instant action, and prior to any discovery, she has made **37** filings, with nearly **600** exhibits, many of which are either duplicative, incomprehensible, or unnecessary. (*See supra* note 2.) That said, this is Shao's first lawsuit in this Court, she is proceeding pro se, and the underlying Arizona Action came to final judgment just a few months ago. So, this case does not yet warrant the "extreme remedy" of an injunction barring any future filing against Customers. *Oliver*, 682 F.2d at 446. But this order will act as notice to Shao that filing additional cases related to the Loan or the instant action may result in an order to show cause directing her to explain why an injunction should not issue. *See Brow*, 994 F.2d at 1038.

## IV.   Conclusion

For the foregoing reasons, the Court grants Customers' motion to dismiss (Doc. No. 41) and finds that the CAC must be dismissed with prejudice under the doctrine of collateral estoppel. For the same reasons, the Court also dismisses Shao's identical claims against all other Defendants. *See, e.g.*, *Anderson v. Local 435 Union*, 791 F. App'x 328, 332 (3d Cir. 2019) (affirming district court's sua sponte dismissal of complaint against non-moving defendant based on the same grounds raised by moving defendant, where plaintiff "had the opportunity to defend the sufficiency of those identical claims in response to [moving defendant's] motion to dismiss"); *Coulter v. Unknown Probation Officer*, 562 F. App'x 87, 89 n.2 (3d Cir. 2014) (affirming district court's sua sponte dismissal of complaint for failure to state

a claim against a non-moving defendant based on grounds raised by moving defendants but common to all defendants and where plaintiff had an opportunity to respond).  Under Arizona law, because the initial four collateral estoppel factors have been met, there may be defensive use of collateral estoppel against a plaintiff like Shao without the defendant being party to the underlying action.  *See Campbell*, 62 P.3d at 968.  So, as the claims brought against all non-moving Defendants arise from the same operative facts, they also must be dismissed.  As such, Shao's CAC is dismissed with prejudice in its entirety.

An appropriate Order follows.

14